# RECORD NO. 13-4279

In the

# United States Court of Appeals
# for the Third Circuit

## SOUTHERN TRACK & PUMP, INC.,
## a Florida Corporation,

*Plaintiff - Appellee,*

v.

## TEREX CORPORATION, doing business as
## TEREX CONSTRUCTION AMERICAS

*Defendant - Appellant*

_____

## Brief of Plaintiff-Appellee, Southern Track & Pump, Inc.
_____

On Appeal from the United States District Court for the District of Delaware
_____

POTTER ANDERSON & CORROON LLP

Peter J. Walsh, Jr.
Ryan M. Murphy
Hercules Plaza
1313 North Market Street
Wilmington, DE 19801
Tel.: (302) 984-6000

BERGER HARRIS

Suzanne H. Holly
1105 North Market Street
11th Floor
Wilmington, DE 19801
Tel.: (302) 655-1140

*Counsel for Appellee*

i

**CORPORATE DISCLOSURE STATEMENT PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 26.1**

Southern Track and Pump, Inc., a Florida corporation has no parent company, nor does any publicly held corporation own any of its stock.

PAC 1151176v.3

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...........................................................................

STATEMENT OF JURISDICTION ....................................................1

STATEMENT OF ISSUES PRESENTED ON APPEAL ......................2

STATEMENT OF RELATED CASES AND PROCEEDINGS.............2

STATEMENT OF THE CASE .............................................................2

    A.    The Claims and Counterclaims ............................................2

    B.    The Summary Judgment Rulings .........................................4

    C.    The Pretrial Rulings .............................................................7

    D.    The Constitutionality Ruling ................................................9

STATEMENT OF FACTS .................................................................12

    A.    The Parties ..........................................................................12

    B.    The Distributorship Agreement..........................................12

    C.    STP Purchases and Financing .............................................13

    D.    Terex's Recourse Agreement with GE ...............................14

    E.    STP Encounters Difficulties as a Terex Dealer .................14

    F.    Terex Refused to Repurchase Equipment Following Termination of the Distributorship Agreement..................15

SUMMARY OF ARGUMENT ..........................................................17

ARGUMENT......................................................................................20

    A.    Standard of Review.............................................................20

    B.    The District Court Did Not Err in Holding that the Dealer Statute Requires Repurchase of All Inventory Previously

Purchased from Terex that Remained Unsold on the Date of Termination of the Distributorship Agreement and That the Dealer Statute's Civil Remedy Provision Requires Damages Based on the "Current Net Price" of the Inventory...........................21

1.    Applicable standards of statutory interpretation.....................22

2.    The District Court interpreted the Dealer Statute in a manner consistent with its plain language..............................24

    a.    The Dealer Statute's repurchase terms..........................24

    b.    The Dealer Statute's civil remedy provision.................26

3.    The application of the District Court's interpretation of the Dealer Statute does not lead to absurd results...................27

    a.    "All" means "all"........................................................27

    b.    The District Court's interpretation of the Dealer Statute does not result in discord among the Dealer Statute's provisions........................................................30

    c.    The District Court's interpretation of the Dealer Statute is consistent with the General Assembly's synopsis of the Dealer Statute.......................................32

    d.    Terex's reliance on other state's Dealer Statutes is misplaced.....................................................................33

4.    The Dealer Statute is sound and any change is best left to the Delaware General Assembly.............................................37

C.    The District Court Correctly Held That Its Application Of The Dealer Statute Was Constitutional.....................................................38

1.    The District Court's Construction and Application of the Dealer Statute Comports with Constitutional Standards..........39

    a.    The civil remedy provision is not an unconstitutional taking...................................................40

b.    Application of the Dealer Statute comports with due process ................................................................45

i.    The Dealer Statute is not unconstitutionally vague ...............................................................45

ii.    The District Court properly rejected Terex's retroactive application argument .........................48

2.    Alternatively, this Court should affirm the District Court's disposition based on Terex's waiver of its constitutional arguments .........................................................49

D.    The District Court Correctly Held That Terex Was not Entitled to Recover under a Theory of Equitable Subrogation Due to Terex's Violation of the Dealer Statute ...........................................50

1.    Terex's unclean hands barred equitable relief .........................51

2.    The Undisputed Facts do not Support a Claim of Equitable Subordination...........................................................54

PAC 1151176v.3

# TABLE OF AUTHORITIES

## CASES

**Pages**

*Acumed LLC v. Advanced Surgical Servs., Inc.*,
  561 F.3d 199 (3d Cir. 2009) ..................................................... 20-21

*Alston v. Countrywide Fin. Corp.*,
  585 F.3d 753 (3d Cir.2009) ......................................................22

*Archbold v. Tristate ATM, Inc.*,
  2012 WL 3887167 (E.D.N.Y. Sept. 7, 2012) ..................................44

*B.S. v. Somerset County*,
  704 F.3d 250 (3d Cir. 2013) .....................................................20

*Baio v. Commercial Union Ins. Co.*,
  410 A.2d 502 (Del. 1979) ...................................................51, 52

*Bristow v. Del. Bd. of Examiners in Optometry*,
  2005 WL 396336 (Del. Ch. Feb. 8, 2005) ................................. 45-46

*Castle Homes & Dev., Inc. v. City of Brier*,
  Wash. Ct. App. 882 P.2d 1172 (1994)..........................................54

*Charpentier v. Godsil*,
  937 F.2d 859 (3d Cir. 1991) .....................................................49

*Crissman v. De. Harness Racing Comm'n*,
  791 A.2d 745 (Del. 2002) .........................................................45

*Dir., Office of Workers' Comp. Programs v. Sun Ship, Inc.*,
  150 F.3d 288 (3d Cir. 1998) ......................................................23

*Dir. of Revenue v. CNA Holdings, Inc.*,
  818 A.2d 953 (Del. 2003) .........................................................23

*Dow Chemical Corp. v. Blanco*,
  67 A.3d 392 (Del. 2013) (Steele, C.J., dissenting)...........................38

*Eddy v. Virgin Islands Power & Water Auth.*,
  256 F.3d 204 (3d Cir. 2001).......................................................49

vi

*Fed. United Corp. v. Havender*,
    11 A.2d 331 (Del. 1940) ................................................................29

*Globe Liquor Co. v. Four Roses Distillers Co.*,
    281 A.2d 19 (1971) ........................................................ 10, 40, 41, 42

*Guardian Title Agency, LLC v. Matrix Capital Bank*,
    141 F. Supp. 2d 1277 (D. Colo. 2001) ...................................... 53-54

*Guthrie v. Lady Jane Collieries, Inc.*,
    722 F.2d 1141 (3d Cir. 1983) .........................................................21

*Hughes v. Long*,
    242 F.3d 121 (3d Cir. 2001) .....................................................21, 49

*In re Cadengo*,
    370 B.R. 681 (Bankr. S.D. Tex. 2007) ...........................................43

*In re Last Will and Testament of Palecki*,
    920 A.2d 413 (Del. Ch. 2007) ........................................................23

*Ingram v. Thorpe*,
    747 A.2d 545 (Del. 2000) ...............................................................22

*Kaisershot v. Gamble-Skogmo, Inc.*,
    96 N.W.2d 666 (N.D. 1959) ...........................................................35

*Kaufman v. Allstate N.J. Ins. Co.*,
    561 F.3d 144 (3d Cir. 2009) ...........................................................23

*Lamie v. United States Tr.*,
    540 U.S. 526 (2004) ........................................................................22

*Lawrence v. City of Philadelphia, Pa.*,
    527 F.3d 299 (3d Cir. 2008) ...........................................................23

*LeVan v. Independence Mall, Inc.*,
    940 A.2d 929 (Del. 2007) ...............................................................22

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
    485 U.S. 439 (1988) ........................................................................39

PAC 1151176v.3

*McDevitt Mac. v. Kobelco Am.*,
  951 F. Supp. 19 (D.N.H. 1997) .......................................................36

*Metro Motors v. Nissan Motors Corp.*,
  339 F.3d 846 (8th Cir. 2003)..........................................................53

*Mourning v. Family Publ'ns Serv., Inc.*,
  411 U.S. 356 (1973)........................................................................46

*Myslewski, v. The City of Rehoboth Beach*,
  2013 WL 5656210 (D. Del. Oct. 17, 2013) .....................................39

*Nationwide Ins. Co. v. Graham*,
  451 A.2d 832 (Del. 1982) ...............................................................47

*Neathery v. M/V Overseas Marilyn*,
  700 F.2d 140 (4th Cir. 1983)...........................................................44

*Ne. Women's Ctr., Inc. v. McMonagle*,
  665 F. Supp. 1147 (E.D. Pa. 1987)..................................................54

*Overcash v. United Abstract Group, Inc.*,
  549 F. Supp. 2d 193 (N.D.N.Y. 2008).............................................44

*PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust, ex rel. Christiana
  Bank & Trust Co.*,
  28 A.3d 1059 (Del. 2011) ...............................................................13

*Pro v. Donatucci*,
  81 F.3d 1283 (3d Cir. 1996)............................................................49

*Reid v. Spazio*,
  970 A.2d 176 (Del. 2009) .......................................................... 28-29

*Reserves Dev. LLC v. Severn Savings Bank FSB*,
  2007 WL 4054231 (Del. Ch. Nov. 9, 2007) .........................50-51, 54

*Rolls-Royce PLC v. Rolls-Royce USA, Inc.*,
  688 F. Supp. 2d 150 (E.D.N.Y. 2010)..............................................43

*Sheehan v. Oblates of St. Francis de Sales*,
  15 A.3d 1247 (Del. 2011) ...............................................................38

*Snell v. Engineered Sys. & Designs, Inc.*,
    669 A.2d 13 (Del. 1995) ..................................................................39

*State v. Hoover*,
    958 A.2d 816 (Del. 2008) ...............................................................45

*Street v. State*,
    669 A.2d 9 (Del. 1995) ............................................................ 22-23

*Taylor v. Diamond State Port Corp.*,
    14 A.3d 536 (Del. 2011) ..................................................................38

*Town & Country Equip., Inc. v. Massey-Ferguson, Inc.*,
    808 F. Supp. 779 (D. Kan. 1992) ...................................................35

*United States v. Abbott*,
    574 F.3d 203 (3d Cir. 2009) ............................................................22

*United States v. Walker*,
    473 F.3d 71 (3d Cir. 2007) ..............................................................21

**STATUTES**

6 *Del. C.* § 2720(3) ...............................................................27, 48

6 *Del. C.* § 2720(4) ............................................................ 32-33

6 *Del. C.* § 2720(5) ...................................................................28

6 *Del. C.* § 2722(a) ...........................................................18, 24

6 *Del. C.* § 2722(b) ..................................................................24

6 *Del. C.* § 2722(c) ..................................................................24

6 *Del. C.* § 2723(a) ...........................................................passim

6 *Del. C.* § 2723(b) ...........................................................passim

6 *Del. C.* § 2723(c) ........................................... 25, 30, 31, 46

6 *Del. C.* § 2724 .........................................................18, 26, 35

6 *Del. C.* § 2724(6) ..................................................................47

6 *Del. C.* § 2727 ........................................................................................ 18, 40

6 *Del C.* § 2727(a) ..................................................................................... passim

6 *Del. C.* § 2727(b) ............................................................................................ 36

6 *Del. C.* § 2727(e) ...................................................................................... 27, 26

28 U.S.C. § 1291 .................................................................................................. 1

28 U.S.C. § 1332 .................................................................................................. 1

**RULES**

Fed. R. App. P. 26.1 ........................................................................................... 12

Fed. R. Civ. P. 8(c) .............................................................................................. 9

**OTHER AUTHORITIES**

Wolfe & Pittenger, CORPORATE AND COMMERCIAL PRACTICE IN DELAWARE
COURT OF CHANCERY, § 12.8 ........................................................................ 52

## STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332. (D.E. 1)[1] The amount in controversy in the case below was greater than $75,000, exclusive of interest and costs. (*Id.*) The dispute was between citizens of different states. (*Id.*)

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. On March 28, 2012, the District Court entered an opinion and order on the parties' cross-motions for summary judgment. (Joint Appendix ("JA") 4–26) On November 16, 2012, the District Court entered a Final Judgment and Order. (JA 27–30) The November 2012 Order was entered in anticipation of the Court considering Terex's constitutional challenge, and left for further consideration the availability and amount of attorneys' fees.[2] (D.E. 304 and 307) On September 30, 2013, the District Court entered an opinion and order denying Terex's Motion to Preclude the Unconstitutional Application of the Delaware Equipment Dealer Contracts Statute, 6 *Del. C.*§ 2720, *et seq* (the "Dealer Statute"). (JA 38–52) On October 29, 2013, Terex filed its notice of appeal. (JA 1–3)

---

[1]    Citations to the record not included in the Joint Appendix are to docket entries ("D.E.") in the Delaware District Court.

[2]    The District Court subsequently clarified that the November 2012 order was not a final, appealable order. (D.E. 314)

1

## STATEMENT OF ISSUES PRESENTED ON APPEAL

1.  Whether the District Court correctly held that the plain language of the Dealer Statute required Terex to repurchase "all inventory" as opposed to only inventory that is "new, unused, undamaged and complete."

2.  Whether the District Court correctly held that civil damages under the Dealer Statute should be calculated as set forth in 6 *Del C.* § 2727(a).

3.  Whether the District Court correctly held that its application of the Dealer Statute was constitutional under the Delaware and United States Constitutions.

4.  Whether the District Court correctly held that Terex was not entitled to equitable subrogation because Terex violated the Dealer Statute.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously.  STP is not aware of any other case or proceeding that is in any way related, completed, pending or about to be presented before this Court or any other court or agency, state or federal.

## STATEMENT OF THE CASE

### A.    The Claims and Counterclaims

On July 23, 2008, Southern Track and Pump, Inc. ("STP") filed a complaint against Terex Corporation, d/b/a Terex Construction Americas ("Terex") in the Delaware Superior Court.  (D.E. 1, Ex. 1)  In that complaint, STP sought the

following relief: (i) a declaratory judgment that the Dealer Statute applied in this case ("Count I"); (ii) damages pursuant to 6 *Del. C.* § 2727(a) for Terex's violation of the repurchase obligation of the Dealer Statute ("Count II"); and (iii) damages for violation of the covenant of good faith and fair dealing relating to Terex's refusal to repurchase inventory ("Count III").[3] (*Id.*) Terex removed the case to the United States District Court for the District of Delaware. (D.E. 1)

Pursuant to the Dealer Statute, STP asserted that: (i) Terex was required to repurchase "all inventory" (JA 94, ¶ 61) ("Pursuant to 6 *Del. C.* § 2723(a), Terex was required to repurchase from STP, 'all inventory' . . . within 90 days of termination."); (ii) Terex had violated the Dealer Statute by refusing to repurchase equipment (*Id.* ¶ 62) ("Terex has categorically denied any obligation or intention to repurchase STP's inventory . . . GE Commercial Distribution Finance Corporation ("GE") has commenced the seizure of STP's inventory and assets."); and (iii) as a result of Terex's violation of its repurchase obligations, STP was entitled to statutory damages pursuant to 6 *Del. C.* § 2727(a). (*Id.* ¶ 63) ("Terex violated 6 *Del. C.* § 2723(a), and, therefore, STP is entitled to relief pursuant to 6 *Del. C.* § 2727(a)") (JA 97, ¶ b) (requesting relief in the form of "[d]amages in an amount

---

[3]     STP twice amended its complaint, adding claims for fraud and negligent or innocent misrepresentation. (D.E. 11, 49) STP dismissed its claims for fraud and negligent or innocent misrepresentation prior to the deadline for dispositive motions. (D.E. 188)

equal to 100% of the current net price (as that term is used in 6 *Del. C.* § 2727(a)) of STP's inventory of Terex equipment and parts").

On August 3, 2010, Terex filed its Answer to the Second Amended Complaint and Second Amended Counterclaims (the "Answer"), which added a claim for equitable subrogation ("Counterclaim III"). (JA 98–117) In its Answer, Terex denied that it violated the Dealer Statute, and that STP was entitled to any relief, including statutory damages. (JA 108–109, ¶¶ 64–66) (denying paragraphs 61–63 of the Complaint); (JA 111, ¶ 83) (denying that STP was entitled to any damages). Terex's only affirmative defenses to Counts I and II of the Complaint concerned the *applicability* of the Dealer Statute. (JA 111–112, ¶¶ 7, 9, 12, and 14). Nowhere in its affirmative defenses did Terex assert the issues it raises on appeal.

In Counterclaim III, Terex claimed that it was entitled to equitable subrogation under a theory that upon payment of Recourse Amount to GE, it was subrogated and equitably substituted for STP for the Recourse Amount. (JA 116, ¶ 6)

## B.    The Summary Judgment Rulings

On June 30, 2011, the parties filed cross-motions for summary judgment that addressed all outstanding claims and counterclaims. (JA 69–70) The only issue not before the Court on summary judgment was the amount of damages to which

STP may be entitled under Counts II and III of the Complaint.  (JA 19, n.9)[4]  The

Court held argument on the cross-motions on December 21, 2011.  (JA 75)  On

March 28, 2012, the District Court issued a Memorandum Opinion (the "Summary

Judgment Rulings") and Order, which resolved liability as to all claims and

counterclaims.  (JA 76)  As pertinent to this appeal, the District Court granted

STP's motion for partial summary judgment as to Counts I and II of the Complaint,

and Counterclaim III, and denied Terex's cross-motions on these claims.  (JA 5)

As is evident from the Summary Judgment Rulings, in opposition to Counts

I and II of the Complaint, Terex argued only that:  (i) the Dealer Statute did not

apply to the Distributorship Agreement; and (ii) if the Dealer Statute applied,

Terex did not violate it because § 2723(b) of the Dealer Statute only required

repurchase of new, unused, undamaged and complete inventory, or inventory that

---

[4]     Terex cites the argument made by STP's counsel at oral argument for the
proposition that the parties "discussed the relevance of GE's repossession and sale
of the equipment to the damages, if any, resulting from Terex's alleged violation of
the statute."  (Def's Br. at 6) (quoting JA 355-356).  The quoted portion of the
transcript, however, relates only to STP's argument concerning Terex's violation.
STP's counsel was explaining how a Court could determine the sufficiency of any
price offered for new or used equipment for purposes of determining whether
Terex complied with the repurchase provisions.  Further, had the District Court
ruled in Terex's favor on Counts I or II of the Complaint but denied summary
judgment as to County III, the parties still would have tried STP's claim for
breaching the covenant of good faith and fair dealing, and damages for that claim.
Those damages would have been compensatory in nature.  Thus, STP *never*
departed from its position concerning entitlement to damages under § 2727(a), or
how that amount was to be calculated.  (*See* JA 37) (discussing STP's expert
report).

Terex otherwise had certified as acceptable.  (*See* JA 12–19) (addressing the parties' arguments as to Counts I and II of the Complaint).[5]

The District Court ruled that the Dealer Statute applied to the Distributorship Agreement.  (JA 12-16)  The District Court also ruled that the Dealer Statute required repurchase of "all" of STP's remaining unsold inventory at the time of termination, pursuant to the plain language of § 2723(a) of the Dealer Statute. Further, the District Court found that, based on the *undisputed* facts, Terex violated the Dealer Statute by refusing to repurchase inventory.  The Court held:

> Here, it is undisputed that Terex failed to repurchase all of STP's remaining inventory following termination of the Distributorship Agreement; nor did Terex contend at that time that any of the exceptions set forth in Section 2724 applied.  Moreover, to the extent Terex offered to repurchase some (but not all) of STP's remaining inventory, Terex failed to comply with the mandatory pricing formula with respect to seven pieces of new equipment, as was required by Section 2723(b). [citations omitted]  Based on these undisputed facts, the Court concludes that Terex violated the repurchase requirements of the Dealer Statute.

(JA 19).[6]

---

[5]    STP took the position that more than seven pieces of equipment were new; Terex had argued that only seven pieces were new.  For purposes of STP's summary judgment motion, STP focused only on the undisputedly new pieces of equipment for the proposition that Terex violated the Dealer Statute even as to the new equipment.  As the District Court found, Terex failed to comply with the repurchase requirements of the Dealer Statue with respect to new equipment.  (JA 19)

With regard to Counterclaim III, the District Court concluded that, "Terex is not entitled to the equitable remedy of subrogation because it has failed to do equity itself, as a result of its violation of the repurchase requirements under the Dealer Statute." (JA 22)  The District Court also addressed Terex's argument in the alternative that it was entitled to repayment of the Recourse Amount (as defined herein) based on an indemnification provision contained in the Distributorship Agreement.  The District Court rejected this argument, ruling that the indemnification agreement could not apply, because it was limited in scope solely to the Distributorship Agreement, and Terex's recourse agreement with GE was "a separate contract to which STP was not a party."  (JA 22)

## C.    The Pretrial Rulings

Following the Summary Judgment Rulings, the only potential issue remaining was the amount of damages owed to STP by Terex.  The damages issue remained in dispute, in part because of uncertainty as to the qualification of any applicable discounts (*See* 6 Del. C. § 2720(3)) (which discounts were subsequently agreed upon by the parties).  At this late stage of the case, Terex then raised numerous issues in connection with the filing of the proposed pretrial order.  (*See*

---

[6]    The undisputed facts as determined by the District Court were not only that Terex *failed* to repurchase STP's inventory of Terex products during the 90-day period provided by the Dealer Statute, but also that Terex *refused* to repurchase inventory.  (JA 18 ("The Court . . . concludes that Terex's refusal to repurchase inventory was in violation of the Dealer Statute's repurchase requirement.")).

JA 32-37)  Consequently, the parties requested leave to be heard prior to the pretrial conference.  (D.E. 286)  The District Court denied this request.  (D.E. 287)

Instead, the District Court considered the new issues raised by Terex at the pretrial conference (the "Pretrial Rulings").  (*See* JA 32-33)  As the District Court noted, "[Terex] concedes, in this case, liability has already been established, and that was done by the Court's ruling on the cross motions for summary judgment regarding Count 2 in the opinion we issued in March of this year."  (JA 33:3–7)  Thus, the District Court made the Pretrial Rulings expressly "on the basis of the record before it and on the basis of the timely arguments that ha[d] been made . . ."  (JA 32:24–25 to 33:1–2)  Consequently, the District Court rejected as untimely those new issues Terex raised relating to liability.  (JA 33)

The District Court expressly ruled on the proper interpretation of § 2727(a) of the Dealer Statute.  It found that:  (i) correspondence in which STP and Terex attempted to negotiate a resolution to their dispute were not relevant because damages were to be calculated based on the inventory Terex failed to repurchase; (ii) § 2727(a) does not allow for any discounts to be taken other than those expressly provided for in the Dealer Statute; and (iii) the concepts of mitigation of damages and compensatory damages were inapplicable, because § 2727(a) provided for statutory damages, and STP had no obligation to prove additional elements in order to obtain statutory damages once liability had been

8

demonstrated.  (JA 34-35)  Further, with the exception of Terex's belatedly-raised constitutional defense, the District Court denied Terex's request to amend the pleadings to add additional defenses, stating:

> [Terex's] request comes too late, after completing already extensive counterclaims and numerous affirmative defenses after resolution of a motion to dismiss and after resolution of summary judgment on the issue of liability under the dealer statute.

(JA 36-37)  Finally, the District Court requested further briefing to address both the question of whether Terex had waived its constitutional arguments due to their extreme untimeliness, and the overall merits of the constitutional arguments.  (JA 35-36)

## D.    The Constitutionality Ruling

Terex argued that it had not waived its constitutionality defense to the Dealer Statute and that the Dealer Statute as applied by the District Court was unconstitutional.   The District Court ruled that Terex had not waived its constitutional challenge, reasoning that STP had cited no *binding* authority for the proposition that a constitutional challenge is waived under Federal Rule of Civil Procedure 8(c) if not pled as an affirmative defense.  (JA 42)  Further, the District Court stated that it was "unconvinced" that STP had been prejudiced by the untimeliness of Terex's assertion of its constitutional challenge, in part because the

District Court was rejecting Terex's constitutional challenge, thereby not leaving Plaintiff without a remedy.  (*Id*.)

The District Court next turned to the merits of Terex's constitutional challenge.  The District Court rejected Terex's argument that the Dealer Statute required no proof of "actual loss," rendering the Dealer Statute punitive (*i.e.,* an unconstitutional taking).  (JA 42-44)  In support of this argument, Terex had relied on a single Delaware Supreme Court case, *Globe Liquor Co. v. Four Roses Distillers Co.*, 281 A.2d 19 (1971), which the District Court found to be distinguishable from the present case.  (JA 43-44).

Additionally, the District Court rejected Terex's argument that the Dealer Statute as construed and applied in this case violated due process because it failed to provide adequate notice of the required conduct and resulting penalty.  (JA 45-46)  The District Court found:

> Here, the plain language of the Dealer Statute makes clear to a person of ordinary intelligence what constitutes a violation and does not leave such a person to guess at the statute's meaning.  In particular, § 2723(a) plainly states that the supplier "shall repurchase from the dealer within 90 days after termination of the contract agreement **all inventory** previously purchased from the supplier that remains unsold on the date of termination of the agreement.  6 *Del. C.* § 2723(a) (emphasis added).  Section 2727 then makes clear that "[i]f a supplier fails or refuses to repurchase **any inventory** covered under this subchapter within the time periods established, the supplier is civilly liable.*"  Id*. § 2727(a) (emphasis added).  The word "inventory is defined in § 2720 as "the

10

> tractors, implements, attachments, equipment and repair parts that the dealer purchased from the supplier." *Id.* § 2720(5).   Finally, as Plaintiff points out, the statute enumerates specific exceptions to the broad requirement (including an exception for old equipment) but nowhere is ***used*** equipment mentioned or exempted.   It follows that a person of ordinary intelligence would know that failing to repurchase used equipment, under the circumstances prescribed here, constitutes a violation of the Dealer Statute.

(JA 45-46) (emphasis in original).   The District Court further found that "the language of the statute plainly sets out the penalty." (JA 46)

The District Court also rejected Terex's argument that the construction and application of the Dealer Statute in this case violates due process because it fails to require culpable conduct before imposing a penalty.   Specifically, the District Court ruled that if it were required to apply one of the legal standards suggested by Terex, Terex's argument would still fail:

> the Court concludes that: (i) several indicia of reprehensible conduct are present, such as "STP was in a financially vulnerable condition, Terex's violation involved repeated actions, and the harm inflicted on STP was not accidential;" (ii) the ratio between the damages award and the actual harm inflicted on STP was at most 4.3:1, which comports with the limits of due process . . . ; and (iii) no reason is apparent on the record to support a conclusion that the statutory damages awarded here are excessive in comparison to civil or criminal penalties that could be imposed for comparable misconduct.

(JA 48-49)

## STATEMENT OF FACTS

### A.    The Parties

STP was a Florida-based equipment dealership that sold, rented and serviced construction equipment and parts.  (JA 6)  After its formation in 2006, STP sold several different brands of equipment at retail.  (JA 227, ¶ 2)  In addition to selling new equipment at retail, STP sold used equipment, rented equipment, and had a service department.  (*Id.*)

Terex Corporation is a publicly-traded Delaware corporation, with its principal place of business in Connecticut.  (Def's Br. At 1)  Terex Construction Americas is a wholly-owned subsidiary of Terex Corporation.  (Def's Rule 26.1 Disclosure Statement)  Terex is a global manufacturer that supplies equipment, as pertinent, to construction industries worldwide.  (*See* JA 6)

### B.    The Distributorship Agreement

In April 2007, STP and Terex entered into a Distributorship Agreement.  (JA 265-81)  The Distributorship Agreement, drafted and proposed by Terex, sets forth the various terms and conditions under which STP was to act as a Terex distributor in Florida.  (*Id.*)  It expressly provides that it "shall be governed by and construed in accordance with" Delaware law.  (JA 273, § 10.2).[7]

---

[7]    Terex signaled its intent not to even attempt to comply with any dealer statutes, including Delaware's, by inserting the following language:

PAC 1151176v.3

## C.    STP Purchases and Financing

Pursuant to the Distributorship Agreement, STP purchased approximately $4 million of equipment, and $50,000 of parts from Terex.  (JA 2, 229, ¶¶ 10–11)  STP needed financing in order to make these purchases, however.  Because Terex did not have its own "captive financing arm" to provide dealers with financing for large inventory purchases, Terex introduced STP to GE, an entity with whom Terex had contracted to provide financing for Terex distributors.  (JA 228, ¶ 5)

In March 2007, STP and GE entered into an Inventory Financing Agreement (the "IFA"), which was personally guaranteed by various individuals and entities affiliated with STP.  (JA 184-91; 228, ¶ 8)  The IFA provided only general terms and conditions for the financing of STP's purchase of Terex equipment.  (JA 184, ¶ 2)  The IFA provided the remedies available to GE in the event of a default:  GE could repossess financed equipment, sell it, pursue STP for any post-sale deficiency, and shift to STP any costs and expenses incurred by GE in connection with enforcing its rights thereunder, including legal fees and expenses.  (JA 187-

---

> It is the parties' intent and agreement that the . . . dealer or franchise laws of any state, insofar as they might otherwise be deemed to apply to this Agreement and the relationship between Supplier and Distributor, shall not apply or be deemed applicable to this Agreement or the relationship created by this Agreement.

(JA 273, § 10.4)  Terex wisely did not raise this provision, as it is void under Delaware law as against public policy.  *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust, ex rel. Christiana Bank & Trust Co.*, 28 A.3d 1059, 1071 (Del. 2011).

13

88, ¶¶ 13–15)  The IFA further prevented STP from asserting any of its claims or defenses based on its relationship with Terex in connection with any action by GE. (JA 188, ¶17)

## D.    Terex's Recourse Agreement with GE

In March 2007, GE requested that Terex enter into a Recourse Agreement; Terex did not inform STP about the Recourse Agreement.  (JA 213-14; 229, ¶ 9). The Recourse Agreement required Terex to pay GE a "First Loss Amount" in the event that STP defaulted on the amount owed to GE pursuant to the IFA **and** GE came into possession of the equipment.  (JA 7, 213).  Terex further agreed that its obligation to pay GE pursuant to the Recourse Agreement was not in any way conditioned upon or affected by, among other circumstances, "any requirement that [GE] exhaust its remedies against [STP]," or "any . . . settlement or granting of any indulgence to, or any modification of any obligation of STP," or "the release of [STP] from any of its agreements pursuant to this transaction, by operation of law or otherwise."  (JA 213)

## E.    STP Encounters Difficulties as a Terex Dealer

From the outset, STP encountered commercial difficulties as a Terex dealer. In late 2007, STP approached Terex for assistance to restructure STP's financing and inventory.  (JA 230, ¶¶ 13–14)  STP continued discussions about restructuring with Terex for several months without resolution and, by April 2008, STP was in

14

arrears on the GE loan.  (JA 230, ¶ 17)  STP intensified its efforts to work with Terex to restructure its inventory and financing, but to no avail.  (JA 230-31, ¶¶ 18–23).  On May 6, 2008, GE sent STP a letter terminating the IFA and accelerating STP's debt to GE.  (JA 7)

Indeed, had Terex worked with STP to restructure its financing and inventory, STP could have paid amounts due to GE.  (JA 231, ¶ 20)  On May 6, 2008, Terex finally forwarded to STP a proposal to restructure a portion of its debt. (JA 194)

## F.    Terex Refused to Repurchase Equipment Following Termination of the Distributorship Agreement

After receiving the notice of acceleration and termination from GE, on May 20, 2008, STP sent a letter to Terex terminating the Distributorship Agreement. (JA 195; 231, ¶¶ 23–24)  In that letter, STP stated that it was terminating the Distributorship Agreement, and was "hereby notifying the manufacturer of its intent to return all Terex inventory and parts . . ., citing a Florida statute." (JA 195) By letter dated May 23, 2008, Terex accepted STP's termination, but denied any obligation to repurchase inventory pursuant to the Florida dealer statute or otherwise.  (JA 232, ¶ 25)[8]  Terex invited STP to advise it of the applicability of any other statute.  (*Id.*)

---

[8]    STP attempted to return parts to Terex, but Terex failed to provide information necessary for STP to ship the parts to Terex.  (JA 232, ¶¶ 25–27)

On June 2, 2008, STP did so, advising Terex of the application of the Dealer Statute and again demanding that Terex repurchase its entire inventory. (JA 232, ¶ 28)  STP further reminded Terex of the status of its financing with GE and the threat of repossession, noting that: "if forced to repossess the equipment and sell it, GECC will not likely obtain full value for the equipment."  (JA 297)

Following this initial exchange of letters, STP and Terex continued to exchange letters until STP filed suit and GE repossessed the inventory.  (*See* JA 282;  284-86;  287-88;  295-96;  299-301).    During the course of these communications, STP maintained its entitlement to require Terex to repurchase its entire inventory and hold Terex accountable for damages, including those available pursuant to the Dealer Statute.  (*See, e.g.*, JA 284) (letter from STP explaining that if settlement negotiations were unsuccessful and GE repossessed the equipment, STP would "have no alternative [but] to require Terex to repurchase all of the inventory in accordance with [the Dealer Statute] . . . .")  Terex, on the other hand, maintained that the Dealer Statute did not apply, and even if it did, it required Terex only to repurchase equipment that was "new, unused, undamaged and complete."  (*See, e.g.*, JA 296-96)  Ultimately, Terex inspected a subset of STP's inventory and offered to repurchase only nine pieces of equipment.  (JA 299-300; 331-32)  Terex's offer on the nine pieces of equipment was not sufficient to satisfy

the balances due and owing to GE on those pieces of equipment.  (JA 200) (Compare "Dealer Balance" with "Terex Offer" columns).

On or about July 24, 2008, GE commenced repossession of the inventory. (JA 249)  GE remarketed the repossessed inventory selling eight pieces of equipment to Terex and several other pieces to third parties.  (JA 198-99; 267) Terex paid prices for these eight pieces of equipment that fell short of the balance that STP owed to GE on these pieces of equipment.  (*Compare* JA 200 *with* 199) In February 2009, GE auctioned off the remaining repossessed equipment.  (JA 202-207)

Pursuant to the Recourse Agreement with GE, Terex paid $434,675.58 to GE (the "Recourse Amount").  Following the disposition of the repossessed equipment and Terex's payment of the Recourse Amount, GE pursued STP and its guarantors for a deficiency of $1,758,696.39.  (JA 208-210)  STP's guarantors resolved this deficiency claim through a payment to GE of $1,000,000.  (JA 221–26)

## SUMMARY OF ARGUMENT

Terex raises essentially four issues on appeal:  (1) whether the District Court correctly held that the Dealer Statute required the repurchase of "used" equipment; (2) whether the District Court correctly held that Terex was required to pay the statutorily-required price for the inventory that Terex failed to repurchase; (3)

17

whether the District Court's construction and application of the Dealer Statute was unconstitutional; and (4) whether the District Court correctly applied the unclean hands doctrine to bar Terex's equitable subrogation claim.

The Dealer Statute is in the nature of a consumer protection statute for equipment dealers. Terex does not contend otherwise. The Dealer Statute delineates a supplier's obligation in the event of a termination by either party. Upon termination by the supplier or dealer, the supplier must (*i.e.,* "shall") repurchase *all* existing inventory, except for certain specified exceptions. 6 *Del. C.* §§ 2722(a), 2723(a) and 2724. Simply put, the Dealer Statute presents the supplier with little choice: the supplier must comply with the Dealer Statute's repurchase mandate; *id.* § 2722(a)); *or,* if the supplier "fails or refuses to repurchase" the inventory, the supplier will suffer the imposition of the "civil remedies" specified in § 2727. (*Id.* § 2727) The course of action plainly desired by the General Assembly—compliance with the Dealer Statute by repurchasing—allows the supplier to avail itself of the "repurchase terms" specified in § 2723.

Here, as the District Court found, it is undisputed that Terex failed to repurchase STP's remaining inventory following termination of the Distributorship Agreement. (JA 19) As such, by its own failure to comply with its repurchase obligation, Terex was relegated to the civil remedies provisions of § 2727. Indeed, from the time that STP notified Terex of its repurchase obligations until the court

below granted summary judgment, Terex refused even to acknowledge the Dealer Statute's applicability. (*See* JA 12-16; 111-12) (D.E. 189)  Only after the District Court rejected Terex's demonstrably infirm position on applicability, did Terex then raise a constitutional challenge to the Dealer Statute.

Terex now attempts to obfuscate the Dealer Statute's plain meaning by confusing § 2723's repurchase terms with the "civil remedy" provisions specified in Section § 2727.  As the District Court reasoned, the Dealer Statute uses "plain terms" in specifying the post-termination obligation of a supplier.  (JA 46)  The statutory scheme protects dealers against the imbalance of power recognized implicitly by the Delaware General Assembly (and states around the Country), by imposing a repurchase obligation.  The result is precisely what the General Assembly intended:  the imposition of civil damages against a supplier that does not comply with the Dealer Statute, despite unequivocal and repeated notice of the Dealer Statute's applicability.

Terex's constitutional arguments fare no better.  Terex argues that it could not have anticipated the District Court's "novel" interpretation of the Dealer Statute.  Yet, Terex, a highly-sophisticated entity, elected to have Delaware law apply to its Distributorship Agreement.  Further, Terex knew or should have known that in the event of a termination, the Dealer Statute required it to either repurchase the inventory or incur statutorily-specified damages and other "civil

remedies." An objective, reasonable person who reads the Dealer Statute would also understand that it was economically advantageous to the supplier to comply with the repurchase obligation, particularly where the inventory included used equipment. Thus, Terex's dilemma is not the product of the District Court's application of the Dealer Statute, but its *own* failure to comply with the Dealer Statute's plain terms. This is not for want of notice; STP informed Terex of the terms of the Dealer Statute and demanded compliance months before GE repossessed STP's equipment.

Finally, the District Court correctly rejected Terex's equitable subrogation theory. That doctrine is inapt here for a number of reasons, but the District Court correctly held that the doctrine cannot apply if the party seeking such equitable relief has not itself done equity. By violating the Dealer Statute (a finding it does not contest on appeal), Terex cannot avail itself of an equitable subrogation claim or any other equitable relief.

## ARGUMENT

### A. Standard of Review

This Court exercises plenary review of an order granting summary judgment and applies the same standard to determine whether there are genuine issues of material fact and whether judgment is warranted as a matter of law. *B.S. v. Somerset County*, 704 F.3d 250, 260 (3d Cir. 2013); *Acumed LLC v. Advanced*

*Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009). Similarly, a plenary standard of review applies to issues of statutory interpretation and questions regarding the constitutionality of a statute. *United States v. Walker*, 473 F.3d 71, 75 (3d Cir. 2007).

Further, the District Court's decision may be affirmed "on grounds other than those considered by the District Court itself." *Hughes v. Long*, 242 F.3d 121, 123 n.1 (3d Cir. 2001); *Guthrie v. Lady Jane Collieries, Inc.,* 722 F.2d 1141, 1145 n.1 (3d Cir. 1983) ("An appellate court may affirm a result reached by the district court on different reasons, as long as the record supports the judgment.").

**B.    The District Court Did Not Err in Holding that the Dealer Statute Requires Repurchase of All Inventory Previously Purchased from Terex that Remained Unsold on the Date of Termination of the Distributorship Agreement and That the Dealer Statute's Civil Remedy Provision Requires Damages Based on the "Current Net Price" of the Inventory**

Terex's arguments concerning the proper interpretation of the Dealer Statute can be dispatched with ease upon an examination of the plain language of the Dealer Statute. Only when a literal reading of the plain language of the Dealer Statute results in an ambiguity or an absurdity must the Court resort to any other cannons of statutory construction. Here, as Terex appears to concede, the Dealer Statute is unambiguous, and, therefore, the District Court was correct to interpret it in accordance with its plain meaning. Terex is now asking this Court to adopt an interpretation of the Dealer Statute that would be tantamount to an amendment. Of

21

course, that is not an appropriate function of the courts.  Rather, amendments are

within the province of the Delaware General Assembly.

### 1.    Applicable standards of statutory interpretation

A court's role in interpreting a statute is to give effect to legislative intent,

and, in ascertaining such intent, a court is bound to follow principles of statutory

construction.  *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758–60 (3d Cir.

2009); *LeVan v. Independence Mall, Inc.*, 940 A.2d 929, 932 (Del. 2007) (citing

*Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999)); *Ingram v. Thorpe*, 747 A.2d

545, 547 (Del. 2000) ("In construing a statute, courts attempt to ascertain and give

effect to the intent of the legislature.") (citation omitted).  The starting point to

discern the intent of the legislature is the language of the statute itself.  *United*

*States v. Abbott*, 574 F.3d 203, 206 (3d Cir. 2009) ("As in all cases of statutory

interpretation, our inquiry begins with the language of the statute and focuses on

Congress' intent.") (citing *United States v. Whited*, 311 F.3d 259, 263–64 (3d Cir.

2002)).  This plain meaning rule dictates that where the meaning of the relevant

statutory language is clear, then no further inquiry is required. *Lamie v. United*

*States Tr.*, 540 U.S. 526, 534 (2004) ("[W]hen the statute's language is plain, the

sole function of the courts . . . is to enforce it according to its terms."); *Ingram*, 747

A.2d at 547; *Street v. State*, 669 A.2d 9, 12 (Del. 1995) (instructing that a court

should not look past the plain language of the statute where it is clear and unambiguous) (citing *Spielberg v. State*, 558 A.2d 291, 293 (Del. 1989)).

It is only where application of the plain meaning rule results in ambiguity or produces an absurd result is it necessary for the Court to employ canons of statutory construction. *See Lawrence v. City of Philadelphia, Pa.*, 527 F.3d 299, 316–17 (3d Cir. 2008) ("The plain meaning of the text should be conclusive, except in the rare instance when the court determines that the plain meaning is ambiguous."); *Dir. of Revenue v. CNA Holdings, Inc.*, 818 A.2d 953, 957 (Del. 2003) (instructing that ambiguity exists where "a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the Legislature"); *In re Last Will and Testament of Palecki*, 920 A.2d 413, 422–25 (Del. Ch. 2007) (where there is only one plausible textual reading of a statute, the court is charged with applying the statute's literal mandate unless doing so would work an absurd result not contemplated by the legislature). And, while the applicable statutory language should be read in the context of the statute as a whole, it is inappropriate to rely upon other provisions within the statute to create an ambiguity that does not otherwise exist. *See Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 156 (3d Cir. 2009) (citing *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006)); *Dir., Office of Workers' Comp. Programs v. Sun Ship, Inc.*, 150 F.3d 288, 292 (3d Cir. 1998).

23

**2.    The District Court interpreted the Dealer Statute in a manner consistent with its plain language**

The District Court held that the Dealer Statute requires the repurchase of "all" inventory, subject only to the enumerated exceptions.  (JA 18)  The District Court also held that the Dealer Statute requires a supplier to pay 100% of the "current net price" of the inventory if it fails or refuses to repurchase in compliance with the Dealer Statute, without regard to any factors other than those specified in the Dealer Statute's civil remedy provision.  (JA 35)  Both of these holdings are in accord with the plain language of the Dealer Statute, and are correct.

**a.    The Dealer Statute's repurchase terms**

The Dealer Statute states unequivocally what a supplier's repurchase obligations are in a termination.  First, in § 2722, entitled "Supplier's requirement to repurchase," the Dealer Statute provides for a repurchase obligation, "as provided in this subchapter."  In particular, § 2722(a) states that,

> Whenever a contract agreement between a dealer and a supplier is terminated by either party, the supplier shall repurchase the dealer's inventory as provided in this subchapter unless the dealer chooses to keep the inventory.

6 *Del. C.* § 2722(a).[9]

---

[9]    Section 2722 also provides the requirements in the event a dealer dies or becomes incompetent, and that the repurchase requirements do, "not apply to a

Next, in §§ 2723 and 2724, the Dealer Statute provides the terms of repurchase with which a supplier must comply.  Section 2723(a) of the Dealer Statute is entitled "Repurchase terms," and defines *what* inventory must be repurchased and *when*:

> The supplier shall repurchase from the dealer within 90 days after termination of the contract agreement all inventory previously purchased from the supplier that remains unsold on the date of termination of the agreement.

*Id.* § 2723(a).  Section 2723(b) provides the prices a supplier must pay to a dealer for equipment and repair parts that are, "new, unused, undamaged, and complete."

*Id.* § 2723(b).  As to that equipment,

> The supplier shall pay the dealer:  (1) One hundred percent of the net cost of all new, unused, undamaged and complete inventory except repair parts, less a reasonable allowance for deterioration attributable to weather conditions at the dealer's location.

*Id.* § 2723(b)(1).

Section 2723(c) provides the process for the supplier and dealer to inspect equipment prior to return.  *Id.* § 2723(c).  The dealer is required to pay for shipping of equipment to its dealership.  *Id.*  The dealer and supplier are each permitted to, "furnish a representative to inspect all inventory and certify acceptability before being returned."  *Id.*

---

supplier that does not require the dealer to order and maintain an inventory in excess of $25,000 at current net price from the supplier."  6 *Del. C.* § 2722(b)–(c).

Section 2724 of the Dealer Statute is entitled "Exceptions to repurchase requirements." *Id.* § 2724. It provides six specific exceptions to a supplier's requirement to repurchase inventory. *Id.* Those exceptions are as follow:

(1) A repair part with a limited storage life or otherwise subject to deterioration, such as gaskets or batteries.

(2) Multiple packaged repair parts when the package has been broken.

(3) A repair part that, because of its condition, is not resalable as a new part without repackaging or reconditioning.

(4) Any inventory that the dealer chooses to keep.

(5) Any inventory that was acquired by the dealer from a source other than the supplier.

(6) Any tractors, implements, attachments or equipment that the dealer purchased from the supplier more than 36 months before date of the notice of termination.

*Id.* Notably, a supplier may refuse to repurchase repair parts based on their condition or "newness," but the Dealer Statute provides no such exception to a supplier's requirement to repurchase other types of inventory.

### b.    The Dealer Statute's civil remedy provision

In § 2727, entitled "Civil remedy for failure to repurchase," the Dealer Statute provides the consequences to a supplier for failing or refusing to repurchase "any" inventory. Section 2727(a) provides, as pertinent:

> If a supplier fails or refuses to repurchase any inventory covered under this subchapter within the time periods established, the supplier is civilly liable for 100% of the "current net price" of the inventory, plus the amount the dealer paid for freight costs from the supplier's location to the dealer's location, plus reasonable cost of assembly

26

performed by the dealer, and plus the dealer's reasonable attorney's fees and court costs, and interest on the "current net price" of the inventory computed at the legal rate of interest, but not to exceed 18% annual percentage rate, from the ninety-first day after termination of the contract agreement.

*Id.* § 2727(a). The "current net price" is defined by the Dealer Statute as: "the price listed in the supplier's price list in effect at the time the contract agreement is terminated, less any applicable discount allowed." *Id.* § 2720(3). The civil remedy provided in § 2727(a) is in addition to any other legal or equitable remedies available to a dealer. *Id.* § 2727(e).

### 3. The application of the District Court's interpretation of the Dealer Statute does not lead to absurd results

The District Court adhered strictly to the language of the Dealer Statute in both the Summary Judgment Rulings and Pretrial Rulings. Terex, on the other hand, asserts that the only reasonable reading of the Dealer Statute is one in which the repurchase obligation is limited, "to new, unused, and undamaged inventory and provides a remedy that considers actual loss and requires return of the inventory to the supplier." (Def's Br. at 22–23). Terex's assertion runs afoul of well-settled principles of statutory interpretation.

### a. "All" means "all"

Terex first argues that § 2723(b)'s pricing formula for "new, unused, undamaged and complete" inventory signals an intent that the General Assembly

did not really mean "all inventory" in § 2723(a) when it used the term "all inventory." Rather, according to Terex, the words "all inventory" are limited by § 2723(b) to mean "both equipment and repair parts referred to in § 2723(b)." (*Id.* at 27–29). This interpretation of the repurchase provision renders the word "all" mere surplusage. The word "inventory" is specifically defined in the Dealer Statute as "the tractors, implements, attachments, equipment and repair parts that the dealer purchased from the supplier." 6 *Del. C.* § 2720(5). Thus, the term "inventory" already encompasses both equipment and repair parts. Moreover, § 2723(a) makes clear that the repurchase obligation does not just include the equipment and repair parts referred to in § 2723(b) because it refers to "all inventory *previously purchased from the supplier that remains unsold* on the date of termination of the agreement." *Id.* § 2723(a) (emphasis added).

Terex argues that § 2723(b) is not solely a pricing provision. This interpretation of § 2723(b), however, renders the introductory words of § 2723(a) ("[t]he supplier shall repurchase from the dealer" and the introductory words of § 2723(b) ("[t]he supplier shall pay the dealer") meaningless. *Id.* § 2723(b). Additionally, this reading of § 2723(b) inserts into the Dealer Statute an additional exception to a supplier's repurchase obligation, when the Dealer Statute already specifies which inventory is excluded from the repurchase obligation in § 2724. *See Reid v. Spazio*, 970 A.2d 176, 181 (Del. 2009) (a court should not graft or add

28

limitations into the existing language of a statute "under the guise of construction") (internal quotation and citation omitted); *Fed. United Corp. v. Havender*, 11 A.2d 331, 337 (Del. 1940) ("[I]t is not . . . the function of the court to graft an exception on the plain and positive terms of [a] statute.").

Terex also argues that the absence of a specific mention of pricing for used equipment indicates that the General Assembly did not intend for a supplier to be required to repurchase such equipment. The Dealer Statute need not provide a pricing formula for all of the inventory for which it requires repurchase. As explained above, the Dealer Statute requires repurchase of "all inventory," and sets specific pricing only for that equipment that is "new, unused, undamaged, and complete," of 100% of the "new cost," less a reasonable deduction for deterioration attributable to the weather conditions at a dealer's location. The selection of this particular category of inventory for a specific pricing formula is indicative only of the importance to the General Assembly of ensuring that the price to be paid for that equipment meets a certain threshold. It would be absurd to assume that in order for the words "all inventory" to mean "all inventory," the General Assembly had to set out a specific pricing formula to anticipate every type of condition in which a supplier might find a piece of equipment (*e.g.,* a specific pricing formula for equipment that was new (meaning unsold) and unused, but had some damage from shipping, and a pricing formula for equipment that is new, has

29

some use, but remained undamaged, etc.).  As the District Court ruled, the General Assembly allowed for suppliers and dealers to negotiate the price for equipment in a condition other than, "new, unused, undamaged, and complete," based on the unique condition of that particular piece of equipment.  This ruling not only comports with the General Assembly's intent, but also with industry practice and common sense.

> **b.    The District Court's interpretation of the Dealer Statute does not result in discord among the Dealer Statute's provisions**

Terex argues that its reading of § 2723(b) of the Dealer Statute is reasonable because it is the most harmonious with the remaining statutory provisions.  Terex cites §§ 2723(c) and 2727(a) in support of this argument.  As to § 2723(c), Terex argues that if the words "all inventory" are interpreted as written, then there would be no reason for § 2723(c)'s provision for certifying acceptability of inventory prior to its return.  As the District Court observed, however, this argument is fatally flawed.

Section 2724 provides that a supplier need not repurchase certain inventory. Section 2723(c) allows both the supplier and the dealer to inspect inventory and certify its acceptability under § 2724 prior to being returned.  Also, even the pricing requirements found in § 2723(b) require inspection to determine, for example, if there is any deterioration to equipment due to conditions at a dealer's

location. Finally, § 2723(c) specifically provides for inventory to be returned FOB to the *dealership* prior to its inspection. If the Dealer Statute's repurchase obligations applied only to "new, unused, undamaged and complete" equipment, then there should be no need to return equipment to the dealership for inspection, as it would already be *at the dealership*.

Regarding § 2727(a), Terex also argues that its reading of the repurchase obligations is harmonious with the statutory damages provision because, if a supplier is only required to repurchase "new, unused, undamaged and complete" inventory, then the statutory damages will be rendered compensatory in nature because they will approximate what the supplier should have paid upon repurchase of the new inventory. This interpretation renders the General Assembly's decision to differentiate between "net cost" and "current net price" in §§ 2723(b) and 2727(a) meaningless. Further, as the District Court recognized, statutory damages are not, by definition, compensatory in nature. (*See* JA 47) (distinguishing statutory damages from non-statutory punitive damages awards). Indeed, under Terex's distorted reading, a supplier who violates its repurchase obligation could end up paying the same amount for equipment under the civil remedy provision as a supplier that complied and repurchased.

      c.     **The District Court's interpretation of the Dealer Statute is consistent with the General Assembly's synopsis of the Dealer Statute**

Terex also argues that its interpretation of the repurchase provisions is reasonable because it is consistent with the General Assembly's stated purpose for the Dealer Statute.  In support of this argument, Terex cites the synopsis to the Dealer Statute, which states:

> This is an Act relating to contract agreements between dealers engaged in the business of retailing new construction, farm, industrial, and outdoor power equipment; and wholesalers, manufacturers, or distributors of their products:  To require repurchase of inventory from dealers upon termination of a contract agreement; to provide procedures to establish limitations, rights, and civil liabilities relative to repurchase:  To extend the right to require repurchase option to the heirs of dealers:  and to provide prompt resolution of warranty claims upon termination.

(JA 316)

Terex focuses on the language relating to dealers engaged in the business of retailing "new" equipment.  (Def's Br. at 33)  But, the language on which Terex focuses deals with the issue of "to whom" the Dealer Statute applies as opposed to "what inventory" a supplier must repurchase.  The Dealer Statute specifically defines "dealer" as

> "a person, firm or corporation engaged in the business of selling, at retail, construction, farm, industrial or outdoor power equipment and who maintains a total inventory of new equipment and repair parts valued at $50,000 or over

32

and provides repair service for the above-mentioned equipment."

6 *Del. C.* § 2720(4).  It is undisputed that STP met the definition of a "dealer."

Terex ignores the language contained in the synopsis that is pertinent to its repurchase obligation.  That language states that two of the purposes of the Dealer Statute are to:  "require repurchase of inventory from dealers upon termination of a contract agreement" and "provide procedures to establish limitations, rights, and civil liabilities relative to repurchase."  (JA 316)  Nothing in the synopsis indicates that the General Assembly intended repurchase obligations to extend *only* to "new, unused, undamaged and complete" inventory.

### d.    Terex's reliance on other state's Dealer Statutes is misplaced

Terex argues that its reading of the Dealer Statute is consistent with the policy underlying dealer statutes nationwide.  Terex leads this argument with a reference to the tenet that courts should review the general policy and purpose "animating other similar statutes from other states."  (Def's Br. at 33).  Terex's arguments based on other state's statutes is inapposite for several reasons, not the least of which is that they may be considered only if the Dealer Statute is ambiguous; which it is not.  Moreover, a brief review of these statutes demonstrates that none has language identical to the Dealer Statute, and, therefore, any application of those statutes here would be hazardous at best.

33

Additionally, Terex's own argument based on other states' dealer statutes only serves to support the District Court's interpretation of the Delaware Dealer Statute. Terex acknowledges that each state's dealer statutes differ. (Def's Br. at 34) (*see also* JA 306) ("state dealer protection statutes vary widely"). Thus, it is reasonable to expect that each state's dealer statute must be interpreted by its own plain language, and reviewing the language of other states' dealer statutes is of limited, if any, utility.

Dealer statutes in general have been enacted to protect dealers, not suppliers, who are perceived as having superior bargaining power. (*See* JA 306) As Terex acknowledges, a number of states extend the repurchase obligations of suppliers beyond equipment that is, "new, unused, undamaged, and complete." (Def's Br. at 35) But, as Terex also notes, those states' dealer statutes explicitly provide enumerated limitations to the inventory that must be repurchased. (*Id.*) Terex does not cite a single instance in which a state dealer statute provides for the repurchase of "all inventory" subject to a list of exceptions, and a further specific exception has been judicially created.

Finally, Terex argues that courts have strictly construed statutory-repurchase requirements, "holding that the dealer's inability to return the equipment negates the supplier's obligation to repurchase." (Def's Br. at 37–38) (citing *Town & Country Equip., Inc. v. Massey-Ferguson, Inc.*, 808 F. Supp. 779 (D. Kan. 1992)

and *Kaisershot v. Gamble-Skogmo, Inc.*, 96 N.W.2d 666 (N.D. 1959)). Neither of the cases Terex cites stand for the proposition that a dealer statute's repurchase obligation is modified by limitations not expressly provided in the statute. Quite the opposite is true, as both cases stand for the proposition that a supplier is excused from liability if an express exception to the supplier's repurchase obligations applies. In both *Town & Country* and *Kaisershot*, dealers elected to sell equipment, and attempted to collect the difference between the sale price and the statutory damages price under their respective state dealer statutes. The courts determined that the dealer's choice to sell the equipment was an election under the dealer statutes to keep the equipment, and therefore, the suppliers were not liable. *Town & Country*, 808 F. Supp. at 781; *Kaisershot*, 96 N.W.2d at 670–72. Thus, any argument concerning the impact of GE's repossession of STP's equipment as a potential election under § 2724 to retain inventory is related to Terex's liability under the Dealer Statues, not the proper interpretation of § 2727(a)'s civil remedy.

Section 2727(a) clearly sets forth what a supplier will be required to pay for its failure to comply with § 2723. Terex does not cite to any language in that provision that would allow deductions for items such as Terex's Recourse Amount, rental revenue received, the proceeds of GE's auction of the repossessed equipment, or the amount of the deficiency GE forgave in order to settle its dispute with STP. Instead, Terex wholly bypasses the plain language of § 2727(a) of the

Dealer Statute, and argues that, in spite of what the General Assembly expressly provided, "the legislative intent underlying section 2727 is to provide compensatory damages for losses caused by a violation of the Dealer Statute."[10] (Def's Br. at 40).  As the District Court found, "the concept of mitigation of damages and compensatory damages are inapplicable as the issue here is statutory damages." (JA 35)  Thus, there is no statutory support for Terex's attempt to read into § 2727(a) a requirement that the civil remedy be calculated in a manner consistent with compensatory damages.[11]

According to Terex, even though the District Court had already found Terex liable, in order to be awarded damages, STP had to establish liability a second time.  Terex bases its position on the inclusion of the following language in § 2727(a): "[i]f a supplier fails or refuses to repurchase any inventory covered

---

[10]    In support of this statement, Terex cites only one case:  *McDevitt Mach. v. Kobelco Am.*, 951 F. Supp. 19, 22 (D.N.H. 1997).  Terex's reliance on this case is misplaced.  In *McDevitt*, the court was not applying § 2727(a).  Indeed, contrary to the spirit of what Terex is arguing, the court in *McDevitt* suggested that the damages allowed by the Dealer Statute are expansive.  *McDevitt*, 951 F. Supp. at 22 ("when § 2727 is read as a whole, it seems clear that dealers are entitled to *any* and *all* damages which can reasonably be viewed as a consequence of a violation of the Dealer Statute.  *See generally* §§ 2727(b) and (e).") (emphasis in original).

[11]    Terex's additional arguments on this point at pages 39–40 are more appropriately addressed as going to the constitutional issues Terex raises, and therefore, STP addresses those arguments in Section C below.

36

under this subchapter within the time periods established." This argument strains credulity.

The District Court ruled on summary judgment that Terex had violated the Dealer Statute's repurchase terms by refusing to repurchase inventory in compliance with the Dealer Statute. If Terex wished to dispute the facts underlying this finding, or raise legal arguments to demonstrate that it was entitled to judgment as a matter of law concerning liability, it should have done so on summary judgment. Terex did not.[12] The only issues remaining after the District Court ruled on summary judgment pertained to the calculation of the damages provided in § 2727(a), not STP's entitlement to such damages.

### 4.    The Dealer Statute is sound and any change is best left to the Delaware General Assembly

To summarize, the District Court adhered strictly to the plain language of the Dealer Statute, which is the expression of the General Assembly's intent. The

---

[12]    Terex misleadingly states that it, "clearly disputed that its conduct before GE repossessed the equipment violated the statutory obligations regarding new, unused, undamaged and complete inventory, but the district court viewed these disputes and arguments relevant only to damages." (Def's Br. at 43). Notably, Terex does not cite to a single pleading or brief in which it supposedly disputed its violation. Terex offers only an excerpt from the summary judgment argument. (*Id.* at 43, n.17 (citing JA 357-59)). In this excerpt, Terex's counsel argues, without record support, that Terex disputes its violation as to the undisputedly new equipment, and makes no other arguments concerning Terex's violation. The only time the District Court characterized Terex's counsel as argument concerning damages was when Terex's counsel began to speak to damages, as opposed to a violation of the Dealer Statute.

interpretation of the Dealer Statute that Terex advances amounts to nothing short of a proposed amendment to the plain language of the Dealer Statute. STP respectfully submits that this is not the proper forum to effect a change to the Dealer Statute. *See Taylor v. Diamond State Port Corp.*, 14 A.3d 536, 542 (Del. 2011) ("In our constitutional system, this Court's role is to interpret the statutory language that the General Assembly actually adopts . . . without rewriting the statute to fit a particular policy position."); *Sheehan v. Oblates of St. Francis de Sales*, 15 A.3d 1247, 1259 (Del. 2011) (citing *In re Adoption of Swanson*, 623 A.2d 1095, 1099 (Del. 1993) ("[W]e do not sit as an überlegislature to eviscerate proper legislative enactments. It is beyond the province of courts to question the policy or wisdom of an otherwise valid law. Rather, we must take and apply the law as we find it, leaving any desirable changes to the General Assembly."); *Dow Chemical Corp. v. Blanco*, 67 A.3d 392, 400 (Del. 2013) (Steele, C.J., dissenting) ("We should not graft our own policy views onto a clear and unambiguous statute.").

## C.    The District Court Correctly Held That Its Application of the Dealer Statute Was Constitutional

Terex asserts that (i) the construction and application of the Dealer Statute in this case is an unconstitutional taking of Terex's property; and (ii) as construed and applied to Terex's conduct, the Dealer Statute violates the Due Process clauses of the United States and Delaware Constitutions because (a) the Dealer Statute did

PAC 1151176v.3

not give Terex adequate notice that its conduct would violate the Dealer Statute; and (b) the Dealer Statute fails to require culpable conduct and should not apply retroactively to Terex.  All of these arguments fail because the Dealer Statute is clear on its face, and because Terex ignores the factual record in this case.

1. **The District Court's Construction and Application of the Dealer Statute Comports with Constitutional Standards**

Both Federal law and Delaware law recognize the well-established principle in favor of the constitutionality of a statute and the avoidance of reaching constitutional questions in advance of the need to decide them.  *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988); *Snell v. Engineered Sys. & Designs, Inc.*, 669 A.2d 13, 17 (Del. 1995) (acknowledging "strong judicial tradition in Delaware" in favor of the "presumption of the constitutionality of a legislative enactment").  A challenger contesting a statute's constitutionality on an as-applied basis must demonstrate that while the statute generally passes constitutional muster, it "operates unconstitutionally as to him or her because of the [challenger's] particular circumstances." *Myslewski v. The City of Rehoboth Beach*, 2013 WL 5656210, at *2 (D. Del. Oct. 17, 2013) (internal quotation and citation omitted).  Thus, the issue before this Court is limited to whether the District Court's construction and application of the Dealer Statute with respect to Terex is unconstitutional.

### a.    The civil remedy provision is not an unconstitutional taking

Terex contends that application of § 2727's civil remedy constitutes a taking of property without compensation because it requires "the repurchase of used and damaged equipment at new-equipment prices, even where the dealer cannot return the property, thereby depriving the supplier of possession and title to the property it is required to repurchase." (Def's Br. at 45).

As a preliminary matter, it should be understood that the reason Terex did not have "possession and title" to the equipment is because it failed to repurchase the equipment within the 90-day window prescribed by § 2723. (*See* JA 34) Terex knew that GE was threatening to repossess the equipment, but declined to act in accordance with the Dealer Statute. (*See* JA 284)  As such, to the extent it now complains about the application of § 2727, it is a circumstance of its own making. Had Terex simply complied with the Dealer Statute, instead of denying its applicability, it would not suffer the civil remedies.

In support of its argument that the application of § 2727 is an unconstitutional taking of its property, Terex relies solely on *Globe Liquor Co. v. Four Roses Distillers Co.,* 281 A.2d 19 (Del. 1971).  Terex fails to note that the District Court analyzed the *Globe Liquor* case and concluded that it "does not stand for the broad proposition that whenever statutory damages are imposed

without proof of actual loss, such damages are punitive and, therefore, an unconstitutional taking." (JA 43-44)

In *Globe*, a franchisor and franchisee entered into a one-year contract. 281 A.2d at 20. The contract provided that the franchise was to automatically terminate following the one-year term. *Id.* The franchisor provided notice to the franchisee that it did not intend to renew the franchise agreement upon its expiration. *Id.* The franchisee then filed suit pursuant to the Delaware Franchise Security Law ("FSL"). *Id.*

The Delaware Supreme Court examined various constitutional issues concerning the FSL, and found it to have transformed a one-year contract with no right of renewal into, "a contract to extend into the indefinite future which [the franchisor] may terminate only upon certain conditions and at its peril." *Id.* at 22. The Court found that if a franchisor terminated improperly, it was subject to "savagely punitive" damages, "even though there was no proof by [the franchisee] that it had suffered any actual damages whatsoever." *Id.* at 21. The Court further observed, "it is difficult to visualize that [the franchisee] could, under any circumstances, show any damage flowing merely from a threat to terminate; yet the making of such a threat is ground for [the franchisee] to seek its remedies, including damages, under the [FSL]." *Id.*

The remedies declared "savagely punitive" by the Supreme Court of Delaware included, among other things, "[l]oss of profits, presumed to be not less than *five times* the profit in the most recently completed fiscal year." *Id.* at 20 (emphasis added). Further, the Court noted that the statutory damages awarded under the FSL were "probably" unrelated to any actual damages suffered by the franchisee. *Id.* at 22. The Court found that these damages were an unconstitutional taking, at least in part, on the basis that all that was required to recover the statutory damages was proof of even a threat to terminate, regardless of whether there was any actual loss to the franchisee. *Id.*

In contrast, the Dealer Statute's civil remedy provision requires that a supplier actually violate its repurchase obligation. *See* 6 *Del. C.* § 2727(a) (awarding statutory damages only, "[w]hen a supplier fails or refuses to repurchase any inventory covered under this subchapter within the time periods established"). Here, as the District Court found on summary judgment, Terex violated the repurchase obligation (JA 19), and did so by *refusing* to comply with the Dealer Statute. Further, STP suffered quantifiable actual harm of well over $1,000,000, as well as harm that is difficult to quantify (such as loss of customer goodwill).

Finally, unlike here, the damages provision of the FSL provided for, *in addition to other damages*, a multiple of *five times* a franchisee's profits for the prior year, regardless of how those profits were derived (*i.e.* the profits could have

been derived from another, non-franchise related aspect of the business).  The Dealer Statute authorizes payment of 100% of the current net price of the inventory that Terex refused to repurchase, not 500% or even 101%.  Indeed, when viewed in the context of this case, § 2727(a) acts as a form of rescission, essentially requiring Terex to repay STP the same price paid for the inventory.  This is hardly punitive.

In addition to its reliance on *Globe*, Terex makes a policy-based argument that STP will receive a windfall by virtue of the damages awarded under § 2727(a).  This argument also is unavailing.  First, Terex argues that § 2727(a) provides a windfall to STP based on the fact that STP received some revenue from renting equipment.  Not only did it cost STP money to start-up as a Terex equipment dealer, but STP also had to pay continuing costs in order to be a Terex equipment dealer for both its rental and retail business.  Such costs included, but were not limited to, advertising and human resources for sales and service, a larger facility, stocking (and therefore purchasing) parts, and trucks and trailers to transport equipment.  It is therefore not accurate to say that STP is receiving a "windfall" based on its having received revenue from equipment rentals.

Finally, simply because the civil damages amount may exceed actual damages does not render a statute unconstitutional.  *See, e.g., In re Cadengo*, 370 B.R. 681, 698–99 (Bankr. S.D. Tex. 2007) (upholding provision of Texas constitution requiring that a home equity lender that fails to cure violations within

a 60-day window forfeits property interest in the loan, reasoning that while forfeiture "may seem like a windfall" the result was plainly proscribed and intended to deter lenders from taking advantage of unsophisticated parties); *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 156 (E.D.N.Y. 2010) (explaining that statutory damages serve a deterrent function and that "while it may exceed actual damages, an award of statutory damages does not constitute a windfall for prevailing plaintiffs.") (citation omitted); *Overcash v. United Abstract Group, Inc.*, 549 F. Supp. 2d 193, 197 (N.D.N.Y. 2008) (finding that statutory damages under Fair Debt Collection Practices Act are "cast not in terms of the plaintiff's recovery, but in terms of the defendant's liability"); *Archbold v. Tristate ATM, Inc.*, 2012 WL 3887167, at *5–*6 (E.D.N.Y. Sept. 7, 2012) (holding that plaintiffs demonstrating violation of Electronic Fund Transfer Act (EFTA) did not incur any actual damages, but even where the record reflected that the plaintiffs sought out a defendant's ATM use to file EFTA suits, "the Court [was] constrained to award damages mandated by the statute"); *Neathery v. M/V Overseas Marilyn*, 700 F.2d 140, 141 (4th Cir. 1983) (examining maritime statute authorizing award of earned wages plus an additional month's wages as being appropriate even for a technical violation of the statute).

b.    **Application of the Dealer Statute comports with due process**

i.    **The Dealer Statute is not unconstitutionally vague**

Terex next argues that the Dealer Statute "fails to give adequate notice" of the "severe penalty" occasioned by the failure or refusal to repurchase.   Once again, Terex's reliance upon the "new, unused" language of § 2723 is a red herring because, as the District Court found, "Terex failed to comply with the mandatory pricing formula with respect to seven pieces of new equipment, as was required by Section 2723(b)."  (JA 19)  In other words, Terex now seeks to create ambiguity about what its obligations are with respect to used equipment; however, as the District Court found, Terex did not even comply with its obligation to repurchase all of the admittedly new inventory.

"A statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice that his contemplated behavior is forbidden" or "if it encourages arbitrary or erratic enforcement."  *State v. Hoover*, 958 A.2d 816, 820 (Del. 2008).  "A statute or rule that 'imposes a standard of conduct for the breach of which an individual will be held responsible must define the conduct with sufficient particularity to enable [the person] to make his [or her] conduct conform.'"  *Crissman v. Del. Harness Racing Comm'n*, 791 A.2d 745, 747 (Del. 2002); *see also Bristow v. Del. Bd. of Examiners in Optometry*, 2005 WL 396336, at *5 (Del. Ch. Feb. 8, 2005) ("[C]ourts review a constitutional vagueness

challenge as it applies to the *challenger's own conduct*.") (citation omitted) (emphasis added). "Where . . . the language of the challenged rule is explicit, that risk is not present." *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 375 (1973) (internal quotations and citations omitted) (emphasis added).

Here, the simple question is whether Terex knew or should have known that by refusing to repurchase STP's inventory, it would potentially subject itself to civil damages in the amount of 100% of the current net price of *all* the inventory. *See* 6 *Del. C.* § 2727(a). The answer is a resounding "yes." The Dealer Statute clearly provides that, in event of a termination, "[t]he supplier shall repurchase from the dealer within 90 days after termination of the contract agreement *all* inventory previously purchased from the supplier that remains unsold on the date of termination of the agreement." *Id.* § 2723(a). The Dealer Statute makes no distinction between new or used equipment, so long as the piece "remains unsold" as of the termination date. *Id.*

Moreover, a fair reading of the Dealer Statute reveals that the General Assembly contemplated that the term "inventory" included rental equipment. This is shown by § 2723(c), which provides that inventory must be returned FOB to the *dealership* for inspection to certify acceptability. *Id.* § 2723(c). There would be no reason to have § 2723(c)'s requirement to return inventory to the dealership if rental equipment or used equipment was not to be included in inventory. *See,*

*Nationwide Ins. Co. v. Graham*, 451 A.2d 832, 834 (Del. 1982) ("Any interpretation of the statute must give full effect to all of the pertinent statutory language . . .").

Thus, as the District Court held:

> Here, the plain language of the Dealer Statute makes clear to a person of ordinary intelligence what constitutes a violation and does not leave such a person to guess at the statute's meaning. In particular, § 2723(a) plainly states that the supplier "shall repurchase from the dealer within 90 days after termination of the contract agreement **all inventory** previously purchased from the supplier that remains unsold on the date of termination of the agreement. 6 *Del. C.* § 2723(a) (emphasis added). Section 2727 then makes clear that "[i]f a supplier fails or refuses to repurchase **any inventory** covered under this subchapter within the time periods established, the supplier is civilly liable.*" Id*. § 2727(a) (emphasis added). The word "inventory is defined in § 2720 as "the tractors, implements, attachments, equipment and repair parts that the dealer purchased from the supplier." *Id*. § 2720(5). Finally, as Plaintiff points out, the statute enumerates specific exceptions to the broad requirement (including an exception for old[13] equipment) but nowhere is **used** equipment mentioned or exempted. It follows that a person of ordinary intelligence would know that failing to repurchase used equipment, under the circumstances prescribed here, constitutes a violation of the Dealer Statute.

(JA 45-46) (emphasis in original).

---

[13]    *See* 6 *Del. C.* § 2724(6) ("Any tractors, implements, attachments or equipment that the dealer purchased from the supplier more than 36 months before date of notice of termination.").

### ii.    The District Court properly rejected Terex's retroactive application argument

Terex further argues that, as applied here, the Dealer Statute imposes "severely punitive" damages without "reprehensible conduct." (Def's Br. at 52–54)  Again, the District Court considered and rejected this argument. (*See* JA 46-48)  For one, the civil damages remedy is hardly punitive.  It requires Terex, in essence, to return the "current net price" of the inventory, less any applicable discounts.  *See* 6 *Del. C.* §§ 2727(a); 2720(3) (defining "current net price").  Simply put, Terex has to pay back what STP paid for the unsold inventory.

Moreover, the Dealer Statute could not be more clear in its mandate that a supplier "shall" repurchase the inventory upon termination.  It is remarkable that Terex, a sophisticated, multi-billion dollar manufacturer, now claims it could not have foreseen the consequences of its failure to repurchase.  As the District Court found, Terex's violation of the statute was not "accidental." (JA 48)  Terex knew that STP's business was suffering under extremely difficult economic conditions; Terex knew that STP needed to restructure (*i.e.* return inventory) in order to meet its mounting obligations to GE; Terex knew that GE was taking steps to repossess the equipment; and, most importantly, Terex knew that STP was demanding repurchase of the equipment *pursuant to the Dealer Statute*. (*See., e.g.*, JA 232, 284)  As such, the District Court correctly found that the remedy prescribed by § 2727 is not unconstitutional. (JA 48-49).

**2.    Alternatively, this Court should affirm the District Court's disposition based on Terex's waiver of its constitutional arguments**

Although the District Court rejected STP's argument of constitutional waiver but found in favor of STP's argument on the merits, this Court "may affirm a District Court's judgment on grounds other than those considered by the District Court itself." *Hughes v. Long*, 242 F.3d 121, 123 n.1 (3d Cir. 2001). This Court has established that the failure to raise an affirmative defense in an answer does not itself constitute an automatic waiver of such defense. *See, e.g.*, *Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir. 1991); *Pro v. Donatucci*, 81 F.3d 1283, 1286 n.2 (3d Cir. 1996). If the defendant raises the affirmative defense "at a pragmatically sufficient time," and the plaintiff's "ability to respond" was not prejudiced, the affirmative defense is not waived. *Charpentier*, 937 F.2d at 864. In exercising its discretion as to whether an affirmative defense should be waived, it is appropriate to consider the diligence exercised in asserting the defense. *See Eddy v. Virgin Islands Power & Water Auth.*, 256 F.3d 204, 209 (3d Cir. 2001) (citations omitted).

Terex made *no* mention of its constitutional challenge to the Dealer Statute in either its pleadings or the extensive summary judgment briefing before the District Court. Only *after* the District Court roundly rejected its statutory interpretation arguments, and following the completion of discovery, did Terex

49

formulate its "critical" constitutional defense.  Terex belatedly sought to avoid the consequences of its tactical decisions through a "last gasp" constitutional challenge to the Dealer Statute.  Terex's constitutional rights have not been abridged in any manner, however, and its arguments to the contrary come too late.

**D.    The District Court Correctly Held That Terex Was not Entitled to Recover under a Theory of Equitable Subrogation Due to Terex's Violation of the Dealer Statute**

In the District Court, Terex asserted a counterclaim for "equitable subrogation" based on the Recourse Agreement that it had entered into with GE. (D.E. 90).  STP is not a party to that agreement and Terex did not inform STP of this recourse arrangement until after both the Distributorship Agreement and the Recourse Agreement were executed.  (JA 22; 229, ¶ 9)  Thus, by the plain terms of the Recourse Agreement, the "obligation" to pay a "First Loss Amount" was solely an obligation of Terex and not dependent upon the separate contractual obligations that STP owed GE under the IFA.  (*See id.*)

Despite this, Terex claimed that STP was responsible for the Recourse Amount under the doctrine of equitable subrogation.  Under Delaware law, equitable subrogation:

> [E]nables one who has discharged the debt of another to succeed to the rights of the satisfied creditor, provided that:  (1) payment must have been made by the subrogee to protect his or her own interest; (2) the subrogee must not have acted as a volunteer; (3) the debt paid must have been one for which the subrogee was not primarily liable;

50

> (4) the entire debt must have been paid; and (5) subrogation must not work any injustice to the rights of others.

*Reserves Dev. LLC v. Severn Savings Bank FSB,* 2007 WL 4054231, at *17 (Del. Ch. Nov. 9, 2007), *aff'd.* 961 A.2d 521 (Del. 2008) (citing 73 AM. JUR. 2D Subrogation § 5 (2011)).  The District Court held, rather unremarkably, that having violated the Dealer Statute, Terex "has failed to do equity itself" and therefore could not recover under its equitable subrogation claim.  (JA 22)  In so finding, the District Court correctly applied Delaware law because, even assuming its applicability, subrogation "must not work any injustice."  *Reserves,* 2007 WL 4054231, at *17 (citation omitted).  Here, it would be unjust to permit Terex to recover on a subrogation theory, when its own conduct—the failure to repurchase inventory—caused Terex to have to make the very payments about which it now complains.

On appeal, Terex now argues that:  (i) its violation of the Dealer Statute does not support a finding of unclean hands; and (ii) it is entitled to summary judgment on the subrogation claim.  (Def's Br. at 55–57)

## 1.    Terex's unclean hands barred equitable relief

As the District Court correctly observed, equitable subrogation "'is an equitable remedy and one who seeks it must, in turn, do equity.'"  (JA 22) (quoting *Baio v. Commercial Union Ins. Co.*, 410 A.2d 502, 506 (Del. 1979)).  *See*

51

generally Wolfe & Pittenger, *Corporate and Commercial Practice in Delaware Court of Chancery*, § 12.8 (subrogation). The *Baio* decision illustrates this very point. There, a carrier sought a statutory right of subrogation against an injured worker who had filed a worker's compensation claim and a tort action against the alleged wrongdoer. *Baio*, 410 A.2d at 505–06. But the carrier, concluding that its potential liability was greater from the tort claim, effectively switched sides to limit its exposure and thereby reduced the "pot" from which subrogation would be statutorily available. *Id.* at 507. The Supreme Court of Delaware held that the carrier did not "do equity" and, accordingly denied the carrier statutory subrogation rights. *Id.*

Here, the District Court found that Terex violated the Dealer Statute. It would stand equity on its head to conclude that having failed to comply with the Dealer Statute, Terex could nevertheless foist its *own* contractual obligation onto STP and thereby offset its liability under the Dealer Statute. As the District Court recognized, Terex failed and/or refused to assist STP in addressing its inability to satisfy or restructure the GE loan. Had Terex—whose resources dwarfed STP— complied with the Dealer Statute, STP would not likely have defaulted on the GE loan and the equipment would not have been repossessed. Indeed, Terex could have avoided the Recourse Amount *altogether,* either by assisting STP with restructuring the GE loan and/or repurchasing equipment. Terex's own conduct

thus caused the circumstances leading to its having to make recourse payments to GE.

Moreover, through its subrogation claim, Terex seeks to assign responsibility to STP for payments which STP: (i) never agreed to; (ii) knew nothing about, and (iii) had no ability to mitigate. Terex neither attempted to reduce or avoid paying the Recourse Amount, or even to advise STP of the recourse payments. (D.E. 89) (JA 98-117; 196-201; 217) Terex knew that GE was proceeding to enforce its default remedies under the IFA against STP and its guarantors; yet, Terex did nothing to intervene and assist. As such, even assuming that STP bore some responsibility for the Recourse Amount (contrary to law and fact), there is no equity or fairness in foisting such payments upon STP.

Finally, Terex incorrectly suggests that inequitable conduct must "shock the conscience of the court" or rise to some egregious level of conduct beyond its failure to comply with the Dealer Statute. (Appellant Br. p. 55) This is an incorrect statement of the law. The failure to comply with a legal obligation can constitute unclean hands. *Metro Motors v. Nissan Motors Corp.*, 339 F.3d 746, 750-51 (8th Cir. 2003) ("Well-accepted general principles of equity support [the] contention that a statutory violation gives a party unclean hands."); *Guardian Title Agency, LLC v. Matrix Capital Bank,* 141 F. Supp. 2d 1277, 1282 (D. Colo. 2001) (refusing equitable relief to a party who committed deceptive trade practices in

violation of Colorado law); *Ne. Women's Ctr., Inc. v. McMonagle,* 665 F. Supp. 1147, 1157 (E.D. Pa. 1987) (holding "relief at equity is precluded" for party in violation of Pennsylvania law); *Castle Homes & Dev., Inc. v. City of Brier,* 76, 882 P.2d 1172, 1179 (Wash. Ct. App. 1994) (holding party could not assert equitable defense where it had violated state statute). It is not necessary to establish reprehensible conduct, although Terex's conduct in refusing even to concede the *applicability* of the Dealer Statute bordered on reprehensible.

### 2.   The Undisputed Facts do not Support a Claim of Equitable Subordination

Finally, Terex fundamentally misunderstands the nature of an equitable subrogation claim. As noted, for equitable subrogation even to apply, "the debt paid must have been one for which the subrogee (*i.e.,* Terex) was not primarily liable." *Reserves,* 2007 WL 4054231, at *17. Here, the recourse payments were not only Terex's primary responsibility, but its *sole* responsibility per the terms of the Recourse Agreement. GE insisted upon the Recourse Agreement, recognizing that STP may be a credit risk. In order to secure the business, Terex voluntarily entered into the Recourse Agreement without ever telling STP. As such, Terex's effort to avail itself of "equitable subrogation" completely misses the mark.

Dated: May 2, 2014

POTTER ANDERSON & CORROON
LLP

*/s/ Ryan M. Murphy*
Peter J. Walsh, Jr.
Ryan M. Murphy
1313 North Market Street, 6th Floor
Wilmington, DE  19801
Telephone:  (302) 984-6000

BERGER HARRIS LLP

Suzanne H. Holly
1105 North Market Street, 11th Floor
Wilmington, DE  19801
Telephone:  (302) 655-1140

55

## CERTIFICATE OF COMPLIANCE WITH RULES 28.1(e)(2)(B)(i) AND 32(a)(7)(C)

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(B)(i) because it contains 13,167 words (based on the Microsoft Word word-count function), excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman, 14-point type.

Dated:  May 2, 2014                    POTTER ANDERSON & CORROON LLP

By:  */s/ Ryan Murphy*

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to 3d Cir. L.A.R. 28.3(d), I hereby certify that Mr. Peter J. Walsh and I, whose names appear on this brief, are members of the Bar of the U.S. Court of Appeals for the Third Circuit.

Dated:  May 2, 2014                    POTTER ANDERSON & CORROON LLP

                                       By:  */s/ Ryan Murphy*

# CERTIFICATE OF IDENTICAL COMPLIANCE AND VIRUS CHECK

I hereby certify that the text of the electronic brief filed with this Court is identical to the text of the paper copies filed with this Court, and that the electronic brief has been scanned for viruses using Vipre Business Virus Software, version 6.2.5530 and according to the program is virus free.

Dated: May 2, 2014                    POTTER ANDERSON & CORROON LLP

                                      By: */s/ Ryan Murphy* _____

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2014, I electronically filed the foregoing Brief of Plaintiff-Appellee, Southern Track & Pump, Inc. with the Clerk of this Court by using the appellate CM/ECF system and shall cause seven paper copies of the Brief to be sent to the Court by hand delivery.  The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

Dated:  May 2, 2014                    POTTER ANDERSON & CORROON LLP

By:  */s/ Ryan Murphy*